Jenkins, District Judge,
(orally.) The bill is filed for an infringement of a patent for peppered enameled ironware, issued to Chester Comstock, the letters patent being numbered 415,161, dated November 12,1889, and a motion is made for a preliminary injunction to restrain the defendants from the alleged infringement pending this litigation. The specification, after stating the process for obtaining the “foundation coating,” as it may be called, of the vessel that is to be enameled, proceeds:
“When the metallic surface to be enameled has been properly pickled and cleansed in the usual way, and a paste of suitable material has been prepared in any one of the usual ways for the production of either the ‘mottled’ ware, ‘white’ ware, or ‘plain’ ware, I incorporate in such paste, preferably, com-minuted or granular oxide of iron, and, after coating the surface of the iron with such paste, having so commingled with it the comminuted oxide of iron, it is subjected in the muffle to the usual fusing process, which produces the glazed appearance, but which also leaves the comminuted or granular oxide, in its natural or substantially natural condition, in practically mechanical suspension within the body of the glaze, and producing an appearance in the finished article which I here denominate as ‘peppered’ enameled ironware, in contradistinction to the esthetic appearance of the severally and previously described well-known articles in the trade. While, as I have said, I prefer to use granular or comminuted oxide of iron to produce this effect, it will be understood that I may employ any other suitable contrasting body which wiL not fuse at the ordinary temperature employed for fusing the paste which subsequently constitutes the coating, and I therefore do not wish to be limited in any degree to the character or quality of the material employed for this purpose, so long as it results in the production of what I have termed ‘ peppered’ enameled ironware,.by which term I intend and mean enameled ironware having mechanically suspended or held in and throughout the glaze a granular or comminuted material in color contrasting with that of the body of the enameled coating, and comparatively infusible as compared with the glaze, so that when the latter is fused on the ware the granular or comminuted *144 contrasting colored material, although mixed with and held in the glaze, will' preserve unimpaired its original form, and thereby give the enamel a peppered appearance. ”
The first claim of the patent is for the process' described.
The second claim is stated to be—
“As a new article of manufacture, peppered enameled ironware having the properties and characteristics substantially as hereinbefore set forth.”
On the 19th of November, 1889, just a week following the issuance of the patent to Comstock, a patent was issued to Volirath, which is the foundation of the defendants’ claim, and his process differs from the other as stated in the specification. After the foundation coating he makes a mixture which he calls “A.” Then, according to the color desired, he takes the necessary ingredients, and adds to them a separately prepared mixture in substantially the same proportions as the mixture A, the amount of the coloring ingredient added being more or less, as a. light or dark result is desired, and this mixture is melted, cooled, and ground dry into a condition like sand, forming a mixture B, and is ground to a different degree of fineness from the mixture A. • He mixes-A and B in the necessary proportions to produce the desired effect, according as the finished product is to have more or less of the color prominent. This mixed mass, composed of A and B, is of a paste-like-consistency, and is applied by pouring it upon or dipping into it the-articles having the first-described foundation coating, and then they are-put into a muffle and subjected to a temperature of about 1,000° Fahrenheit, and there is produced what is called in the.patent “a speckled appearance,” consequent upon the different degrees of fineness of the mixture.
The question in this litigation is upon the construction of the second claim in the Comstock patent, whether the words “having the-properties and characteristics substantially as hereinbefore set forth,” are-to be limited to the process described in the specification, or whether it is a claim for peppered enandel ware, however produced. Some months, after these patents Volirath filed a claim for another patent, his claim being for an article of manufacture, namely:
“Ironware having incorporated in the enamel throughout the entire coating: specks contrasting in color with the remainder of the enamel.”
There was an interference declared upon that claim, and it was held, by the patent office that the second claim of the complainant’s patent was in anticipation of this alleged discovery, and it is asserted by the-complainant that that decision substantially forecloses this claim of the defendants, and substantially holds that the second claim of the complainant’s patent is to be construed as a claim for articles of enameled ironware having this peppered appearance, however produced. The-court cannot agree with that conclusion. The issue before the patent office was whether this claim for the article of peppered ware, or speckled, ware, as claimed by Volirath, was anticipated by the second claim of Comstock, and the controversy there was which was the first inven *145 tion. The sole controversy was whether Vollrath- or Comstock had first invented peppered ware. The patent office held that Comstock was the first inventor; but it was not within the province of the patent office to construe this second claim of the patent, nor was it essential to the determination of the question there involved.
There were some things said in the opinions by the different officers of the patent office which have been supposed to bear upon this question, and, so far as the court is advised by reading their decisions, there would seem to be some comfort to be gained from them by both parties. The decision of the examiners in chief asserts:
“The appearance may be given in various ways, amounting to but little beyond the ordinary resources of the craft in manipulating their enameling processes; but it appears from the record that each party to the interference has secured a patent to his peculiar method of producing the effect, and each has also been allowed a claim for his specific product resulting from his specific process. * * * Each of these claims'is supposed to correspond to the product resulting from the pursuance of the method set out in the patent of the respective parties. The issue in interference is deemed to be somewhat generic, thus covering the species made by either party. Hence this interference. The title to the generic claim must turn upon the evidence as to what each, party did in arriving at the general result of speckled or peppered ware, and the dates of such experiments. In any case, each party’s species, as defined by its mode of production, is secured to him beyond cavil. This is an instructive instance, moreover, of the utility, if avoidance of litigation be an object, of defining and limiting the novel product of a process by the terms of that process in setting forth the true and patentable substance, contrary to usual practice, but correctly set out and distinguished by the commissioner in Ex parte Painter, 57 O. G-. 999. The existing allowed claims to both parties we regard as specific, being based on their respective processes.”
Now, upon the other side, the acting commissioner of patents, in his decision, said:
“Without setting forth the various facts upon which a conclusion is based as to just what will meet the terms of the issue, it is sufficient to state that such subject-matter is held to be enameled ironware having incorporated in the enamel specks, fusible or infusible in their inherent characteristics, scattered throughout the enamel, and giving it a speckled or peppered appearance.”
It would thus seem that the acting commissioner of patents, so far as his attention was called to the subject, took a different view of this second claim from that taken by the examiner; but, as before observed, it was not a question for the officers of the patent office to construe. That is within the province of the court.
Upon this motion there have been presented the ex parte affidavits of two experts on each side construing this claim differently, so that it may be said, at the least, that the proper construction of this second claim of the Comstock patent is not altogether free from doubt. The court need not go further than to say that, without expressing any opinion whatever upon the construction which should be given to that second claim, for, upon a motion for an injunction in advance of any adjudication by the-courts, it is well settled that a preliminary injunction will not be allowed unless the case is entirely clear and unless irrevocable injury is to result. *146 from witholding the injunction. Here there is no sort of dispute that the defendants are responsible for any damages which the complainants may sustain if there should be a final adjudication in their favor upon the construction contended for their claim. As the question is not free from doubt, and is one respecting which the experts are not in accord, it would seem to be improper for the court, as a preliminary step in the litigation, to do that which might work great injury to the defendants, when, if the complainants shall finally be adjudged entitled to relief, the defendants are amply able to compensate them for the injury.
The motion tor an injunction will therefore be overruled.